In the Matter of HARRY B. SALE, an Attorney, Respondent.

First Department, June 30, 1936.

*Samuel C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Joseph R. Truesdale* of counsel [*Herbert H. Faber* with him on the brief], for the respondent.

MARTIN, P. J.   The respondent was charged with professional misconduct in acting as attorney for the defendants subsequent to his appearance as attorney for the plaintiff in the same action. It was also charged that as attorney for the defendants he was grossly negligent in permitting a judgment by default to  be entered and in failing to take steps to have it set aside, and that he falsely stated to the defendants that no judgment had in fact been entered. He was further charged with having falsely stated in a letter to the petitioner that he had not acted as attorney for the defendants in the aforesaid case.

The charges arose out of the following facts: In July, 1927, one Leon Fruchtman brought to the respondent a summons in an action in the Municipal Court, Borough of Brooklyn, Second District, entitled Leon Fruchtman against Lillian Goldberg and Harry Goldberg, in which the attorney for the plaintiff was Burton B. Turkus.   The cause of action indorsed on the summons was " money had and received," in the sum of $105.86.   Service had

been made on Lillian Goldberg. Mr. Fruchtman requested the respondent to represent him in the action. The respondent then telephoned Mr. Turkus, who said he had no objection to a substitution. The respondent crossed out the name of Mr. Turkus and wrote in his own as attorney for the plaintiff. He then caused the summons to be served on Harry Goldberg. There was no formal substitution of attorneys.

Mr. Fruchtman, on September 12, 1927, moved to substitute Gabriel Kotcher as his attorney. The respondent opposed the application, and it was denied because he had never been the attorney of record of Mr. Fruchtman. Thereafter Mr. Fruchtman obtained a formal stipulation from Mr. Turkus, his original attorney, that Mr. Kotcher be substituted.

On January 7, 1928, the respondent was retained by the Goldbergs to defend the action. On October 9, 1929, the action came up for trial. The plaintiff was represented by Mr. Kotcher and the defendants by the respondent. After hearing the testimony the court ruled that there should be a jury trial and directed that the case be placed at the foot of the jury calendar and the jury fee paid by the plaintiff. The following day the plaintiff paid the jury fee and the case was placed on the calendar. It was reached in regular course, and on November 26, 1929, an inquest was taken by the plaintiff and judgment entered. In 1934 the Goldbergs sought a loan from the Home Owners Loan Corporation and the judgment was found of record. Mr. Goldberg thereupon retained an attorney, who presented the matter to the Bar Association following a statement of the respondent that he had no recollection of having represented the Goldbergs and desired more time to investigate.

In response to a letter from the Bar Association setting forth the charges and requesting an explanation of the matter, the respondent on October 4, 1934, wrote in part as follows: "Regarding the matter of Leon Fruchtman against Goldberg, Mr. Torgman has been misinformed as to the facts in this matter, which were as follows: The writer had a summons served upon Harry Goldberg as attorney for Leon Fruchtman some time in 1927, and the Goldbergs appeared by an attorney by the name of Samuel Steinlauf. Thereafter the Goldbergs came to me with their troubles against Mr. Fruchtman, and after investigation discovered that the Goldbergs were correct, and that Mr. Fruchtman had certain hallucinations of money due him from the Goldbergs. I told Mr. Fruchtman that I would have nothing further to do with his case, and I was thereupon substituted by Gabriel Kotcher. Any judgment that might have been obtained against the Goldbergs

in this matter the writer is unaware of and had nothing to do with the same, and was never substituted for the defendants in that particular action."

On March 16, 1935, in response to a notice of hearing before petitioner's committee on grievances, respondent wrote as follows:

" To the best of my recollection they [the Goldbergs] asked me if I would intercede for them in this matter, and I explained to them that since I had represented Mr. Fruchtman I could not do so in this matter, but I would be very glad to help them out in any other matter that might come up. They consulted me about a number of matters thereafter as I recall it, which I took care of for them. * * *

" I cannot understand how the Goldbergs make any claim upon me in this matter."

Confronted with the record of his appearance upon the trial the respondent professed astonishment. With the consent of the petitioner he paid to the Goldbergs $250 in settlement of the judgment, together with interest and costs.

Before the referee the respondent testified that by reflection and investigation he was able to recall the facts and circumstances of his retainer by the Goldbergs. He testified in effect that having met the Goldbergs they convinced him that the plaintiff had no cause of action and had the habit of starting unfounded actions, and he thereafter withdrew as attorney for Mr. Fruchtman, with whom he had the following conversation:

" ' I don't want to represent you any more, Fruchtman. I do not believe any of these cases are honest causes, and, furthermore, I want to be paid what you owe me up to to-day.' He said, ' Will you give me my papers? ' I said, ' Not until you pay me what you owe me.' * * *

" ' I see that you have no claims and that you don't intend to pay for the work that has been done.' He says, ' Well, 1 will prove in Court, that I have a claim. I win all my cases.' I said, ' You know the Goldbergs wanted me to represent them.' He said, ' You go ahead and represent them, and it is all right with me, and I will show you in Court I am going to beat you.' "

The respondent further claimed that in stating to the grievance committee of the petitioner that he had not represented the Goldbergs in the action, he had forgotten the facts and circumstances because of the long period of time that had elapsed and the fact that he had lost or mislaid any records that might have shown his connection with the case. He testified he had no intention to deceive or mislead the committee, but merely stated the facts as he believed them to be at that time. The respondent further

admitted his realization of the impropriety of representing the defendants, even upon the assumption that he had the consent of the plaintiff, but urged that it was due to his inexperience, having been admitted less than a year, and just started to practice for himself.

The referee has reported that had the respondent rested his defense upon the plea of youth and inexperience, forgetfulness or unfamiliarity with the canon of ethics prohibiting the representation of conflicting interests, he would unhesitatingly have reported that the charges had been satisfactorily explained. The referee, however, reports he is convinced that the claim of the respondent that his client, Mr. Fruchtman, gave his consent is an afterthought and a fabrication. The referee further found all of the charges to have been sustained and that the respondent had aggravated his misconduct by a sham defense and false testimony.

It fairly appears from the record that the neglect of the respondent to follow the case of Fruchtman v. Goldberg upon the calendar was due to his inexperience and his belief that he would be notified when the jury fee was paid. His statements to the Goldbergs that judgment had not been entered undoubtedly were based upon his belief that the jury fee had not been paid or the case put upon the calendar. As noted, the respondent has fully indemnified the Goldbergs for the loss and expense incidental to the entry of the default judgment. His conduct, however, in making such statements without investigation was careless. Moreover, the respondent denied that he made any such statements, whereas the weight of the evidence indicates that he did.

The evidence also sustains the finding of the referee that the defense of consent is a fabrication, and sustains the charge of falsely stating to the Bar Association that he never represented the Goldbergs.

The respondent attempted before the referee to bolster a sham defense by false testimony. He has thus inexcusably attempted to justify an excusable offense.

The respondent should be suspended for six months, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

McAvoy, O'Malley, Untermyer and Cohn, JJ., concur.

Respondent suspended for six months.